Adrianos Facchetti (SBN. 243213)
Of Counsel for TRAVERSE LEGAL, PLC
301 East Colorado Boulevard, Suite 514
Pasadena, CA  91101
Tel.:  (626) 793-8607
Fax:  (626) 793-7293
adrianos@facchettilaw.com

Enrico Schaefer (*Pro Hac Vice* pending)
Mark G. Clark (*Pro Hac Vice* pending)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, Michigan 49684
Tel.:  (231) 932-0411
Fax:   (231) 932-0636
enrico@traverselegal.com
mark@traverselegal.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TV EARS, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>SYK GROUP, LLC, LIBERTY HEALTH SUPPLY, LLC, TRUEDIO, LLC and SAM Y. KIM, an individual,<br><br><br>        Defendants. | Case No.  **'16 CV0867 GPC WVG**<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1

THERE IS NO OTHER CIVIL ACTION ARISING OUT OF THE SAME TRANSACTIONS OR OCCURRENCES AS ALLEGED IN THIS COMPLAINT PENDING IN THIS COURT, NOR HAS ANY SUCH ACTION BEEN PREVIOUSLY FILED AND DISMISSED AFTER HAVING BEEN ASSIGNED TO A JUDGE

FOR ITS COMPLAINT in this matter, TV Ears, Inc., by and through its attorneys, Traverse Legal, PLC, states:

1. TV Ears, Inc. ("TV EARS" or "Plaintiff") is a for profit company, organized and existing under the laws of the State of Nevada, with its principal place of business located in the Spring Valley, California.

2. Defendant Sam Y. Kim ("Kim") is an individual residing in the State of Illinois.

3. Defendant SYK Group, LLC ("SYK") is a limited liability company organized under the laws of the State of Illinois and conducts business within the State of California.

4. Defendant Liberty Health Supply, LLC ("Liberty") is a limited liability company organized under the laws of the State of Illinois and conducts business within the State of California.

5. Defendant TrueDio, LLC ("TrueDio") is a limited liability company organized under the laws of the State of Illinois and conducts business within the State of California.

2

6.   Kim is the founder and Chief Executive Officer of SYK and Liberty.

7.   SYK owns and operates TrueDio and Liberty at the direction of Kim.

8.   TrueDio is an ecommerce retailer of audio assistive listening products including TrueDio Ears.  See,  http://www.truedio.com/index.php/about-us/. TrueDio also provides in the terms and conditions portion of their ecommerce website that all use of the site shall be governed "in all respects by the laws of the state of California" and that "jurisdiction over and venue in any legal proceeding directly or indirectly arising out of or relating to the site (including but not limited to the purchase of TrueDio products) shall be in the state or federal courts located in Los Angeles County, California." See screenshot of Terms and Conditions, Exhibit 1.

9.   Liberty is an ecommerce reseller of assistive living devices, including the product TrueDio Ears.  See, http://www.libertyhealthsupply.com/default.asp.

10. At all times, Defendants were working at the direction of each other, and for their individual and mutual benefit.

11.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business within this judicial district related to the unlawful activity at issue in this Complaint and such unlawful activities were directed at Plaintiff  and its intellectual property whose principal place of business is in this District.

12.   This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and the amount in controversy exceeds $75,000.00. The Court has pendent jurisdiction over Plaintiff's state law claim.

## GENERAL ALLEGATIONS

### Plaintiff's Assistive Listening Product.

13. Plaintiff's owner, George Dennis, came up with the idea for TV EARS when his father began losing his hearing in the early 90's.

14. In late 1990, Mr. Dennis developed a cost-effective wireless 'assistive listening device' designed for clear and distinct television listening and dialogue comprehension.

15. Through the use of infrared technology, Plaintiff's products aim to replace the need for hearing-aid devices.

16. Plaintiff designed its assistive listening device to help clarify television sound and to make it easier for the user to hear and comprehend television dialogue.

17. Plaintiff designed its assistive listening device with a distinctive under the chin feature, similar to a stethoscope with the ear tips connected by the receiver in the center.

18. Plaintiff's 'under the chin' receiver houses an easy to reach and find volume and tone control.

19. The benefits of Plaintiff's assistive listening products include, but are not limited to:

    a. The headset was developed to assist people with hearing issues by enabling the user to adjust the volume to that individual's personal comfort level, thereby significantly enhancing his/her ability to hear and understand the dialogue from the television audio.

    b. Not only does the headset increase the audio experience for the user, but the device also works to amplify the speech and dialog while decreasing the surrounding ambient noise

    c. For couples, the person listening can do so in privacy, without disturbing the person who is not watching television or is watching it at a lower volume level.

    d. The wireless feature of the headset eliminated the problem of cords running from the television to the listener.

    e. The headset can be used with the television's volume on mute, leaving other persons in the vicinity free from the television's sound.

    f. The headset is compatible with any television.

**Plaintiff's "TV EARS" Brand Development.**

20. Plaintiff needed to develop a brand and trademark for its innovative product which would be unique, recognizable and easy to remember for hearing impaired and other consumers in the wireless TV audio headphone market.

21. Plaintiff, through George Dennis, considered a number of names for its new product but felt strongly that "TV" needed to be incorporated into the brand name for the product. Mr. Dennis developed the idea of an "Emitting and Receiving System" to identify the product and used the acronym "EARS" for this purpose because the system had a transmitter emitting infrared to a headset/receiver.  This became the TV EARS brand.

22. Plaintiff has registered trademarks ("Marks") related to its TV EARS products.

a. "TV • EARS" (Registration Number 3387270) for the "infrared audio headphone products" with a first use date of August 10, 1997.

b. "TV EARS TV" (Registration Number 3793416) for "television set with wireless audio transmission to headphones" with a first use date of January 7, 2010.

c. "VOICE CLARIFYING CIRCUITRY" (Registration Number 4348897) for audio headphones; television set with wireless audio transmission to headphones; wireless headsets for use

with television; TV speakers with a first use date of May 1, 2009.

These registrations are attached hereto and incorporated herein as Exhibit 2.

23. The TV EARS product has gone through several iterations over the years, improving on its assistive listening device, receiver, charger and components.

24. Plaintiff has developed, marketed and sold several variations of its assistive listening device, all incorporating the word "EARS" including:

a. TV EARS Original: The least expensive of all of the TV Ears' headsets, the Original clarifies and amplifies speech and dialog while lowering background noise. The system is light and comes with an adjustable tone control, and ergonomically angled foam ear tips.

b. TV EARS Digital: TV Ears' most popular model, the Digital is the first wireless voice clarifying TV listening device that offers digital connectivity and is compatible with Dolby Digital, SRS, and PCM products. The system is ultra-light, weighing only two ounces, comes with an adjustable tone control, and has ergonomically angled foam ear tips.

c. TV EARS Dual Digital: The 5.0 Dual Digital wireless TV listening system is the most powerful of the TV Ears' headsets, containing twice the number of light emitting diodes. The system operates off of a digital connectivity via an optical digital audio cord and is compatible with Dolby Digital, SRS, and PCM, thus ensuring that it works successfully with any television, home audio system, cable, or satellite box. Ergonomically angled foam ear tips direct uninterrupted audio directly through the ear canal and create a clear sound with each listen. Using a "Snap-Fit Charging" mechanism, the Dual Digital provides an error free charge.

d. TV EARS SPEAKER:  Similar to surround sound, the TV Ears 5.0 Speaker works using wireless technology to provide 90 dB of volume to the user. By plugging the transmitter into the analog or digital ports of the television, cable, or satellite box, the audio travels via speed of light transmission to the user.

(Exhibit 3; Screenshots of Plaintiff's products).

Plaintiff has also established common law trademarks in "TV EARS" "TV EARS ORIGINAL" "TV EARS DIGITAL" and "TV EARS DUAL DIGITAL," incorporating the dominant 'EARS' nomenclature and branding ("Common Law Trademarks"). (Exhibit 3; Screenshots of Plaintiff's products)

25. The TV EARS registered Marks and Common Law Trademarks constitute a 'Family of Marks' ("Family of Marks") focused on the descriptive word "TV" and the dominant and distinctive word "EARS."

**Plaintiff's Market Success in Marketing & Selling TV EARS**

26. Since 1998, Plaintiff has marketed and distributed TV EARS through various marketing channels including TV advertisements for direct sale to customers, retail stores including all Radio Shack and Costco Warehouse Stores, print advertising including AARP magazine, and the internet.

27. In or about 2004, Plaintiff developed a unique advertising campaign, which has since become iconic, featuring several variations of middle age or older couples sitting on a couch smiling, with one partner using TV Ears.  Plaintiff estimates an investment of approximately $12,000,000 on this advertising campaign alone and the most recent advertisement of this iconic couple is of celebrities Pat and Shirley Boone, Exhibit 4.

28. Since 2004, Plaintiff has spent approximately $15,000,000 dollars advertising and marketing its TV EARS products.

29. TV EARS serves its predominant markets across the world, with most of its customers located in the United States, Canada, and Europe.

30. TV Ears remains the top selling brand for TV listening devices and has been and is recommended by doctors and audiologists in North America and Europe.

31. Plaintiff has sold over two million TV EARS units since 1998 and its product is well recognized by the relevant consuming public.

32. The "TV EARS" brand is now famous due to consumer awareness, market position and Plaintiff's long-term print, television, internet and other advertising.

33. The public and customers alike trust the "TV EARS" brand.

**Defendants' Unlawful Business Model**

34. In or about 2013, Defendants developed a business model to copy Plaintiff's product design, trademarks, functionality, customer support materials, marketing materials and advertising model.

35. Upon information and belief, Defendants targeted TV EARS with the specific intent to market and sell off of Plaintiff's established goodwill.

36. Upon information and belief, Defendants purpose was to, among other things, cause customer confusion about source and origin and divert Internet traffic from TV EARS.

37. Defendants named their nearly identically designed product "TrueDio Ears" as part of their efforts to cause confusion, achieve market legitimacy and divert customers.

38. Defendants specifically targeted the dominant portion of Plaintiff's Family of Marks – the word "EARS" – in naming their product as part of their efforts to cause confusion, achieve market legitimacy and divert customers.

39. Defendants selected the formative portion of Plaintiff's Family of Marks "Ears" as part of their mark so they could incorporate the word 'Ears' onto their web pages and other web-base advertisement in order to divert traffic of consumers looking for TV EARS products.

40. Defendants' "TrueDio Ears" products are a 'knock off' of TV EARS headphone products, design elements, unique marketing strategies, advertising materials and Marks.

41. Defendants are using Plaintiff's trademarked "Voice Clarifying Circuitry" in their user's manual for TrueDio Ears, which is available on the websites www.trudioears.com and www.libertyhealthsupply.com. Exhibit 5, TrueDio Ears user Manual.

42. Defendants use a picture of an elderly couple seated on a couch on their packaging, owners manuals and advertisements, which is the same type of

advertising that has become associated with Plaintiff's advertising of its TV EARS product. Exhibit 6, TrueDio Ears Marketing Materials.

43. Among similar tactics, Defendants bid on "TV EARS" as a keyword to trigger their own advertisements on Google and other Internet advertising platforms.

44. Among similar tactics, Defendants use the words "TV EARS" in the text of their Google Adwords and in other advertising to make it appear that clicking on those advertisements will lead the consumer to a page owned, operated or sponsored by Plaintiff.

45. Among similar tactics, Defendants deceptively use an advertising landing page on Amazon.com for deceptive ads and then advertise their "TrueDio Ears" product as a "sponsored result" on the Amazon advertising platform.

46. Defendants, in an effort to boost their online visibility at Plaintiff's expense, are deceptively using "Digital" and "Dual" digital nomenclature used by Plaintiff in its advertising to identify Defendants' TrueDio Ears products that have features similar to Plaintiff's TV EARS Digital and TV EARS Dual Digital products, even though the TrueDio Ears products do not employ digital audio but simple analog audio signals.

47.  Defendants advertise to the public that TrueDio Ears is a registered trademark by displaying the "r" symbol in connection with the public display of TrueDio Ears when in fact there is no trademark registration for TrueDio Ears.

48.  Defendants, in an effort to trade on Plaintiff's goodwill and boost their online presence, are advertising for sale TV EARS earpiece accessories on the www.libertyhealthsupply.com website even though they do not fit the TrueDio Ears products and are not authorized to sell TV EARS products, in an effort to gain search engine visibility from Plaintiff's goodwill and trade name.  Exhibit 7; Screenshots.

49.  There is actual customer confusion in the market, as evidenced by the footer on Defendants' own website which shows a customer testimonial for TrueDio Ears which allegedly says: "'These **TV Ears** are a marriage saver. Simple to install, and Easy to use, and they sound great. Thanks Liberty.' - Jenkins - Longwood, FL." (emphasis added)  Exhibit 8.

50.  There is actual confusion in the marketplace as Amazon, for instance, has matched the TV EARS earpiece accessories with TrueDio Ears on the Amazon website, thus suggesting those products are related as illustrated below, and which was an objective of Defendants' advertising scheme in order to gain recognition of Defendants' products through Plaintiffs goodwill associated with Plaintiff's TV EARS trade name. Exhibit 9.

51.   Defendants also employ on the Liberty website a comparison chart that contains false and incorrect technical information concerning Plaintiff's TV EARS product related to battery life and frequency, thereby disparaging Plaintiff's product in comparison to Defendants' products.

52.   On information and belief, Defendants own and operate an infringing domain, www.truedioears.com whose registration information is privacy protected but that redirects to the home page of Liberty's website.  Exhibit 10, WHOIS for truedioears.com.

## COUNT I

### Cybersquatting under the Anticybersquatting
### Consumer Protection Act – 15 U.S.C. 1125(d)

53.   Plaintiff realleges all of the preceding paragraphs as if fully set forth herein.

54.   Plaintiff has valid trademark rights in each mark in the Family of Marks under which it conducts its businesses.

55.   Plaintiff's Family of Marks are distinctive and have acquired secondary meaning in the marketplace from their use in commerce over the course of many years as a source for Plaintiff's TV EARS products, and in fact, the TV EARS brand has become famous in assistive listening devices for television use.

56.   Defendants have registered and used www.truedioears.com to market and sell the TrueDio Ears products.

57. Defendants' use of the www.truedioears.com domain name for purposes of selling their knock off TV EARS product is a bad faith attempt to profit from use of one or more of Plaintiff's Family of Marks.

58. Defendant's registration and use of the www.truedioears.com domain constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiff to relief.

59. By reason of Defendant's acts alleged herein, Plaintiff's remedy at law is not adequate to compensate for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 as it relates to the subject domain name.

60. By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiff, in an amount of one hundred thousand dollars ($100,000.00) for the acts of cybersquatting.

61. This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT II

### Federal Trademark Infringement

62. Plaintiff realleges all the preceding paragraphs as if fully set forth herein.

63. Plaintiff is the owner of the Family of Marks, which are used in connection with the marketing and sale of its TV EARS products used in commerce in the United States.

64. Defendants' use of Plaintiff's Marks in connection with the marketing, promotion and sale of its TrueDio Ears products has caused and is likely to continue to cause confusion in the minds of consumers and create a false impression in the minds of consumers that Plaintiff is affiliated, connected or associated with Defendants' TrueDio Ears products and/or that Plaintiff sponsors or approves of such products in violation of 15 U.S.C. 1125(a).

65. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. 1116 to enjoin Defendants from further infringement of one or more of Plaintiff's Family of Marks.

66. Defendants are also liable to Plaintiff for all profits and damages resulting from their infringing use of one or more of Plaintiff's Family of Marks.

## COUNT III

## Federal Trade Dress Infringement

67. Plaintiff realleges all the preceding allegations as if fully set forth herein.

68. The TV EARS headphone product constitutes protectable trade dress under Section 43(a) of the Lanham Act.   The protectable trade dress of the TV

EARS products are non-functional features that identify the product and source to customers.

69.   Defendants' use, marketing and offering for sale of its TrueDio Ears headphone products constitutes the use in commerce of false designations of origin, false or misleading descriptions or representations that are likely to cause confusion and mistake and to deceive consumers as to the source of origin of Defendants' products or the affiliation, connection, or association of Defendants with Plaintiffs or the sponsorship or approval of Defendants' products by Plaintiff and constitute trade dress infringement in violation of 15 U.S.C. 1125.

70.   Defendants' use as heretofore described is deliberate and willful.

71.   Defendants acts of infringement have caused both irreparable harm and monetary damage to Plaintiff and unless restrained will cause further irreparable harm.

## COUNT IV

### Federal Unfair Competition and False Designation

72.   Plaintiff realleges all the preceding paragraphs as if fully set for herein.

73.   Defendants' acts as described above are likely to cause confusion or mistake or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff as to origin, sponsorship or approval of Defendants' goods by Plaintiff in violation of 15 U.S.C. 1125(a).

74.  Defendants' acts of unfair competition as described above are deliberate and willful and taken with the intent to misappropriate the goodwill and reputation associated with Plaintiff's TV EARS.

## COUNT V

## Federal Dilution By Blurring

75.  Plaintiff realleges all the preceding paragraphs as if fully set forth herein.

76.  The Family of Marks are famous due to their distinctiveness, duration and extent of use and widespread public recognition.

77.  Defendants' unauthorized use in commerce of Plaintiff's famous Family of Marks has caused and will continue to cause dilution in creating a false association with Plaintiff's Family of Marks and serves to impair the distinctiveness of one or more of Plaintiff's famous Family of Marks.

78.  The foregoing acts of Defendants are deliberate and willful and are a violation of 15 U.S.C. 1125(c).

79.  The foregoing acts of Defendants have caused irreparable harm and damages to the Plaintiff.

## COUNT VI

## California Unfair Competition

80.   Plaintiffs reallege all the preceding paragraphs as if fully set forth herein.

81.   Defendants' acts as described above are likely to cause confusion or mistake or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff or as to the origin, sponsorship or approval of Defendants' goods or commercial activities by Plaintiffs, and/or meant to deceive the public at the expense of consumers and the Plaintiff, in violation of Section 17200 et. seq. of the California Business and Professional Code.

82.   Defendants are direct competitors of Plaintiff in their marketing, promotion and sale of the TrueDio Ears products.

83.   Defendants' acts of unfair competition are deliberate and willful, unlawful, unfair, fraudulent, deceptive, misleading or untrue, and undertaken with intent to misappropriate the goodwill and reputation associated with Plaintiff's TV EARS products.

WHEREFORE, Plaintiff prays the Court:

A.    Issue a Permanent Injunction necessary to provide Plaintiff adequate and appropriate relief;

B.    That Defendants be ordered to pay damages;

C.     That Defendant be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election by Plaintiff, in an amount of One Hundred Thousand Dollars ($100,000) per domain name infringement for cybersquatting;

D.     That Defendant be ordered to pay Plaintiff's attorneys' fees and costs; and

E.     That the Court grant Plaintiff all other relief to which it is entitled and such other or additional relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all matters triable as of right in the instant cause of action.

Respectfully submitted this 11th day of April, 2016.

/s/Adrianos Fracchetti
Adrianos Facchetti (SBN. 243213)
Of Counsel for TRAVERSE LEGAL, PLC
301 East Colorado Boulevard, Suite 514
Pasadena, CA 91101
Tel.: (626) 793-8607
Fax: (626) 793-7293
adrianos@facchettilaw.com

Enrico Schaefer (*Pro Hac Vice* pending)
Mark G. Clark (*Pro Hac Vice* pending)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, Michigan 49684
Tel.: (231) 932-0411

Fax:  (231) 932-0636
enrico@traverselegal.com
mark@traverselegal.com

*Attorneys for Plaintiff*